MONTGOMERY-WARD & CO., INC. *v.* WOOLEY.

[No. 18,037. Filed November 2, 1950. Rehearing denied December 7, 1950. Transfer denied March 22, 1951.]

*Parr, Parr & Parr,* of Lebanon, for appellant.

*Richardson & Burns,* of Lebanon; *Floyd W. Burns* (of counsel), of Indianapolis, for appellee.

WILTROUT, J.—Appellee brought this action to recover damages for injuries resulting from a fall in appellant's store while she was a customer therein. It is alleged that appellant negligently caused its floor to become slippery and dangerous by improperly applying a floor dressing in too great quantities and in failing to remove excess dressing or place another substance on the floor. Trial by jury resulted in a $2500 verdict for appellee.

Appellant assigns as error the overruling of its motion for new trial, the grounds set forth being: (1) rulings concerning improper statements made by appellee's counsel during argument to the jury; (2) excessive damages; (3) insufficiency of the evidence; (4) that the verdict is contrary to law; (5) the giving by the court of certain of its own instructions; (6) refusal to give certain of appellant's tendered instruc-

tions; (7) overruling appellant's motions for a directed verdict; (8) the admission of certain testimony and the refusal to admit other testimony.

The evidence most favorable to the appellee discloses the facts hereinafter set forth. For over eight years appellant has used a floor dressing on its floor, which dressing is described as a thin oil bearing the trade name of "Mycosheen." The floor consists of boards approximately four inches in width. The dressing was applied every two or three weeks. The floor has a brown color.

Appellee slipped and fell on the floor on Thursday, May 29, 1947. The last application of the oil before that was on the previous Monday night, at which time the store manager supervised its application by another of appellant's employees. The oil was in a five gallon container, which was placed on the east side of the store. A mop was laid on the floor and oil poured on it. The oil was then applied to the aisles with this mop. Two to four gallons of the oil are used on the floor each time it is applied. Following its application a second mop was used over the floor for the purpose of removing excess oil. This second mop was not wrung out. The employee who applied the oil testified that he didn't know whether the second mop removed the excess oil, but as far as he remembered it did, and also testified that if there was oil on the floor it could be slick in spots.

On the day of the accident appellee went into appellant's store to make a purchase. There is a stairway at the east end of the building, which appellant intended to use. Before she got to the stairway she slipped and fell. The heel of her shoe made a semicircular mark on the floor. She testified that "my heel just buried in the oil on the floor clear down to the grain"; that where her heel slipped, the oil "just

oozed"; that the oil "was on there pretty heavy"; "It looked like it wasn't smoothed down"; "It looked like it was still standing on the floor"; "Where my foot slid in the oil there was great gobs of it." Her clothes had large brown oily stains. Appellee's observations of the floor were made after her fall.

The evidence and the inferences which legitimately flow therefrom, in our opinion, are sufficient to establish the fact that the floor where appellee fell was covered with an excess amount of the oily floor dressing, which caused the floor to be slippery and dangerous, and that the last application of this was made by appellant approximately three days before the accident.

Appellant insists that there was no evidence that it knew or in the exercise of reasonable care should have known of the condition of the floor prior to the accident.

"The inviter will be charged with knowledge of a dangerous condition created by his own negligence or the negligence of his employee acting within the scope of his employment . . ." 65 C. J. S., Negligence, § 51, p. 545. *J. C. Penney, Inc.* v. *Kellermeyer* (1939), 107 Ind. App. 253, 19 N. E. 2d 882, 22 N. E. 2d 899; *Glenn* v. *Grant Co.* (1935), 129 Neb. 173, 260 N. W. 811; *Bury* v. *Woolworth Co.* (1930), 129 Kan. 514, 283 Pac. 917.

The evidence relative to appellant's negligence, appellee's contributory negligence, appellee's assumption of the risk, and whether appellant's negligence was the proximate cause of the injury, was conflicting. These questions were for the jury. *Robertson Bros. Department Store* v. *Stanley* (1950), 228 Ind. 372, 90 N. E. 2d 809. The verdict was sustained by sufficient evidence and was not contrary to law. There was no error in refusing to direct a verdict

for appellant. For a case in which the facts were remarkably similar to the ones in this case, see *Phelps* v. *Montgomery Ward & Co.* (1937), 231 Mo. App. 595, 107 S. W. 2d 939. Other cases supporting our conclusion are: *Hulett* v. *Great A. & P. Tea Co.* (1941), 299 Mich. 59, 299 N. W. 807; *Galarno* v. *Great A. & P. Tea Co.* (1932), 260 Mich. 113, 244 N. W. 250; *Lamb* v. *Purity Stores, Inc.* (1932), 119 Cal. App. 690, 7 P. 2d 197; *Trottier* v. *Neisner Brothers, Inc.* (1933), 284 Mass. 336, 187 N. E. 619; *Molnar* v. *Scott-Burr Stores* (1940), 33 Ohio L. Abs. 142, 33 N. E. 2d 418.

Appellant urges that the damages assessed by the jury in the sum of $2500.00 are excessive. Appellee suffered a broken leg (Potts fracture). The leg was in a cast for six weeks. She was on crutches for two weeks, and then walked with a cane. She suffered an injury to the pelvic region and abdomen, bruises on hip, wrenched and strained muscles, an enlarged ankle, and suffered pain from the date of the injury to the date of the trial, over two years later, especially in damp weather. We cannot say as a matter of law, as appellant urges that we do, in view of values in recent years, that the damages are so large as to lead to the belief that the assessment was caused by prejudice, passion, partiality, corruption, or misunderstanding of the evidence. We must hold that the damages assessed were not excessive.

During his final argument appellee's counsel stated: "You can't beat a million dollars. You have heard it said, you can't beat a million dollars. Montgomery-Ward is a big corporation and it was expected that they would assert every effort to prevent evidence being brought before the jury and demand the greatest of loyalty from every employee." Appellant moved "in view of the statement made" that the submission of the cause be set aside and that the jury be discharged for

the reason that the statement was so prejudicial and calculated to prejudice the jury that no instruction given by the court would be sufficient to cure it. The court overruled the motion and told the jury that objection was made to a statement by appellee's counsel, telling the jury what the statement was that was objected to, and that, "The Court thinks that statement is improper and I am instructing you to disregard the statement. Under our system of law everybody is supposed to stand equally before the court and this sort of statement in my judgment should not have been made, and I am instructing you not to consider the statement."

Appellee attempts to justify the statement made during argument by pointing out that the evidence discloses that appellant is a big and wealthy corporation, and also points out some rather tenuous evidence claimed to support the remainder of the statement.

An appeal attempting to excite prejudice against a party because of that party's wealth or bigness, thereby attempting to draw the minds of the jury away from the matter in dispute, is improper argument. Unjustifiable statements of counsel in argument, not warranted by the evidence, implying that the adverse party is trying to suppress facts have frequently been held to be improper. Annotations: 78 A. L. R. 766 and 1438. Nevertheless, it does not follow that all statements of this nature require reversal.

Many abuses of argument may be sufficiently corrected by an instruction by the court to the jury to disregard the improper statements where counsel does not thereafter persist in and aggravate such abuses. This court may only interfere where, notwithstanding the efforts of the trial court to correct the abuse, the irregularity appears to be such as to prevent a fair trial. *Rudolph* v. *Land-*

*werlen* (1883), 92 Ind. 34; *N. Y. C. R. R. Co.* v. *De Leury* (1935), 100 Ind. App. 140, 192 N. E. 125; 3 Lowe's Rev., *Works' Indiana Practice,* § 54.67.

Thus in *Southern R. Co.* v. *Bulleit* (1907), 40 Ind. App. 457, 82 N. E. 474, plaintiff's counsel said, "Give him (plaintiff) $2000. The defendant will make that much money in the time you are signing your verdict." The jury was instructed to disregard this inexcusable remark, and it was held that the harm was cured by the court's action.

The trial courts are in a much better position to determine the effect of such statements than is this court, and have a wide field of discretion as to withdrawing cases from the jury by reason thereof. *Coats* v. *Strawmeyer* (1939), 107 Ind. App. 102, 21 N. E. 2d 433; *Meeker, Guardian* v. *Decker* (1938), 104 Ind. App. 594, 10 N. E. 2d 416; *King* v. *Ransburg* (1942), 111 Ind. App. 523, 39 N. E. 2d 822, 40 N. E. 2d 999. We hold that the lower court did not abuse its discretion here.

Appellant objected that the court's instruction No. 12 was confusing and misleading in that it went outside the evidence and the issues by instructing the jury as to the use of wax and as to the selection of an improper product. A reading of the entire instruction, together with the court's instruction No. 10 and appellant's instructions Nos. 5 and 12, convinces us that it was not subject to the objection made.

The court's instruction No. 13 instructed the jury generally as to the duty of the proprietor of a store to use reasonable and ordinary care. It was objected to as being an abstract statement of the law not applied to the issues and the evidence. This instruction, when considered with other instructions given, cannot be said to be such error as would necessitate a reversal. The further objection, based

upon appellant's theory that there was no evidence that appellant created the condition complained of has already been decided adversely to appellant.

Appellant's objections to the court's instruction No. 14 are based upon its contention that the proprietor of a store is not guilty of negligence in oiling or using other dressing on the floor until he has notice or knowledge that the floor is slippery and dangerous, and also that the instruction does not confine the jury to the acts of negligence alleged in the complaint. We have previously in this opinion disposed of appellant's first contention. A reading of all of the instructions discloses that the jury was properly confined to the acts of negligence alleged.

Appellant also complains of the court's instruction No. 15, dealing with the measure of damages. This instruction, among other things, told the jury that they might take into consideration the physical pain and suffering appellee may yet endure as a result of her injuries in the future, if any, if it was found she was not yet cured, and also any deformities, if any, as shown by the evidence, or whether she bears marks or scars as a result of her alleged injuries. Appellant says that, "there are no allegations in the complaint as to marks, scars or deformities and there is no evidence that appellee suffered any marks, scars or deformities or that she would suffer any future pain and suffering."

The complaint alleges that appellee suffered various injuries, including a broken leg, and still suffers pain and that the injuries and all the harmful effects thereof are permanent. There was evidence that appellee's ankle is enlarged. There was evidence that she suffered pain from the date of the injury to the date of the trial, over two years later. The evidence reveals a reliable basis, beyond mere conjecture or possibility,

that appellee will suffer some future pain. While some of the wording of the instruction is not as apt as it might be, in our opinion the complaint, reasonably construed, and the evidence, support the instruction. Moreover, the following wording of the Supreme Court in *Riechmann* v. *Reasner* (1943), 221 Ind. 628, 633, 51 N. E. 2d 10, is applicable here:

"Appellant does not point out any evidence that would or could be improperly considered. The instruction details what is to be taken into consideration in determining damages and includes the words 'if any has been shown' applied to each part of the instruction, and no jury of average intelligence could have been misled. The instruction was not mandatory in form, and in the absence of evidence tending to permit the jury to consider improper elements in computing damages, could not be the basis for reversible error."

There was no error in refusing appellant's tendered instruction No. 1 on the subject of pure accident. The subject-matter thereof was adequately covered by the court's instruction No. 11.

Appellant also insists that its instructions Nos. 8 and 13 should have been given because no other instruction limits appellee's recovery to the matters in issue or covers the subject-matter of the tendered instructions. A reading of other instructions given, particularly the court's instruction No. 10, and appellant's instructions No. 5 and 12 show that the jury was adequately instructed on the subject.

Appellee's husband was asked if he had a doctor bill to settle for the services rendered to appellee. He answered, over appellant's objection, that he did. The subject was pursued no further, and there was no evidence offered as to the amount of any such bill.

In *City of Terre Haute* v. *Pigg* (1940), 108 Ind. App. 68, 27 N. E. 2d 137, which was an action by a married woman to recover damages for personal injuries, plaintiff was permitted to testify as to the amount of money her husband paid for her medical treatment. This was admitted as having a bearing on the extent of her injuries, and the jury was instructed not to include any such money spent by her husband in assessing damages, but that such testimony was admitted for the sole purpose of its bearing, if any, upon the extent of plaintiff's injury and not for the purpose of establishing such expenditures as an element of damages recoverable. In the instant case there was no evidence of the amount of the doctor bill. No instruction was requested limiting the purpose of the testimony. We do not believe the jury was misled by this evidence.

Appellant's final contention is that the court erred in refusing to permit its witness, the store manager, to answer the question: "Now, has Mycosheen a non-skid quality?" The witness was not qualified as an expert, and testified that he did not know the ingredients contained in the product. This question was subject to the objection made that it called for a conclusion of the witness.

We find no reversible error and the judgment is affirmed.

Royse, C. J., not participating.

NOTE.—Reported in 94 N. E. 2d 677.